**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **AMBIMJB, LLC** | * | |
| **Plaintiff** | * | |
| **v.** | * | **Case No.: 1:20-cv-00807-JKB** |
| **STRATEGIC ARMORY CORPS, LLC,** | * | |
| **Defendant** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANT STRATEGIC ARMORY CORPS' REPLY IN FURTHER SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Strategic Armory Corps, LLC ("SAC"), by its undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 105, respectfully submits this reply in further support of its motion for summary judgment, and in support thereof, states:

## I.     INTRODUCTION

Plaintiff AMBIMJB ("AMBI") accuses SAC of attempting to "rewrite" an agreement and "imputing self-serving intentions behind the agreement and terms into the agreement which do not exist." ECF 53-2 at 2. As the record reveals, however, both parties understood their agreement to encompass much more than what was expressly set forth in the primary writing executed by the parties. As evidenced by the circumstances surrounding the parties' relationship, and the parties' actions subsequent to execution of the agreement, it is clear that certain key material terms were omitted from the contract and that SAC is not liable to AMBI as claimed in AMBI's complaint.

The underlying dispute relates, in part, to a short and unsophisticated contract titled "Patent Purchase Agreement" (the "Agreement") wherein AMBI, an engineering firm, purported to sell its interest in US Pat. No. 9,816,769 (the "Patent") claiming a purportedly patentable gas piston

system for incorporation onto, and use with, rifles to SAC, a rifle manufacturer and distributor.[1] The facts developed in discovery, however, show that, notwithstanding the simplicity of the Agreement, the parties' relationship was based on the fundamental premise that the gas-piston system claimed in the Patent could be manufactured and incorporated onto SAC's rifles for sale. As SAC's owner, Jose Schincariol ("Mr. Schincariol), put it:  "Why would I pay $2.5 Million for a system that doesn't ... fit my system?"[2]  ECF 49-1 at 6.

Of particular significance to SAC's motion here is the notion that one of the terms clearly understood by the parties, but not included in the Agreement, was that AMBI was to provide consulting and engineering services to SAC at no charge to ensure that the purpose of the parties agreement—incorporation of the gas piston system onto SAC's rifles—was met.[3]   As is now known, despite the parties' best efforts, the gas piston system could not be manufactured and incorporated onto SAC's rifles as the parties intended.[4]

---

[1]    SAC hereby incorporates the facts as set forth in Section II of its opposition to AMBI's motion for summary judgment and memorandum in support of cross-motion for summary judgment, ECF 49-1.

[2]    As detailed in SAC's opposition (ECF 49-1), there remains a dispute of fact as to whether the claimed gas piston system could be incorporated onto SAC's rifles for manufacture and sale.

[3]    AMBI argues that the Court should invoke the parol evidence rule and not look beyond the four corners of the Agreement because that agreement is allegedly unambiguous.  ECF 53-2 at 9- 10.  The parol evidence rule, however, only "merges all *prior and contemporaneous* negotiations in the written instrument[.]"  *Baker DC, LLC v. Baggette Constr., Inc.*, 378 F. Supp. 3d 399, 407 (D. Md. 2019) (emphasis added; internal quotations omitted).  As noted in SAC's opposition (ECF 49-1), however,  it is the totality of the dealings between the parties, including those *after* execution of the Agreement, that demonstrate that the Agreement encompassed more than was expressed in the document.  The omission of certain material terms from an agreement, as SAC asserts here, can create ambiguity, thus giving a court reason to evaluate parol evidence to determine that agreement's true meaning.  *See, e.g.*, *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 122 (2d Cir. 2014).

[4]    In what amounts to nothing more than a red herring, AMBI continuously attempts to paint SAC as "cash-strapped" whose financial instability is the real reason behind its alleged breach of

AMBI sued SAC after it ceased making any further payments under the Agreement as a result its purpose becoming frustrated due to the gas piston system not being able to be incorporate for manufacture onto SAC's rifles.  In its initial Complaint, AMBI brought claims for breach of contract (Count I) and unjust enrichment (Count II).  ECF 2.  SAC then asserted counterclaims for mutual mistake (Count I), unilateral mistake (Count II), frustration of purpose (Count III), breach of implied warranty of fitness for a particular purpose (Count IV), and failure of consideration (Sale of Invalid Patent) (Count V).  ECF 7.

The parties engaged in discovery, after which AMBI moved for summary judgment on Count I of its Complaint and all claims presented by SAC in its Counterclaim.  ECF 43.  SAC opposed AMBI's motion and filed its own motion for summary judgment as to Count II of AMBI's Complaint.  ECF 49.[5]  In arguing that SAC is not entitled to summary judgment on Count II, AMBI relies on the barest of evidence; evidence rebutted by *every other piece* of relevant evidence, including the testimony and actions of its President, Michael Brown ("Mr. Brown").  AMBI's claim that there is a genuine dispute of material fact as to Count II, therefore, rings hollow.

---

contract.  *See* ECF 43-2 at 9; ECF 53-2 at 2.  Contrary to this mischaracterization, the record shows that SAC is currently profitable and selling everything it can produce.  ECF 49-1 at 9.

[5]      In its supporting memorandum, AMBI claims that SAC "improperly relies on" an unsigned Report of its expert, David Lauck.  The fact that the Report was not signed was a mere oversight and does not preclude the Court's reliance on the report.  *See, e.g.*, *Norvell v. Metro. Life Ins. Co.*, No. CV RDB-14-3662, 2015 WL 6549274, at *3 n.5 (D. Md. Oct. 28, 2015) (rejecting argument that expert report was "unsigned and unsworn" and considering expert report).  Indeed, AMBI's counsel marked Mr. Lauck's initial and rebuttal reports as exhibits to Mr. Lauck's deposition, and questioned Mr. Lauck extensively regarding his opinions.  *See, e.g.*, Lauck Deposition Excerpts, attached hereto as **Exhibit 1**, at 31:7 – 40:17 (initial introduction of report and questioning regarding Mr. Lauck's prior testimony and CV attached to report); 53:2 – 60:5 (testifying about patents Mr. Lauck reviewed in preparation of his report and testing AMBI's gas piston system in forming the opinions set forth therein); 73:20 – 83:4 (questioning Mr. Lauck regarding his conclusions page-by-page); 171:13 – 176:4 (marking Mr. Lauck's rebuttal report as an exhibit to and questioning regarding his conclusions).  Mr. Lauck testified consistent with the findings in these reports, and any conclusions in his reports will be offered as part of his testimony at trial.

Viewing the record as a whole, it is requested that this Court grant SAC's motion for summary judgment on Count II of AMBI's Complaint.

## II.     <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pr. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S. Ct. 2505, 2510 (1986).  This standard "provides that the mere existence of *some* alleged factual dispute … will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. 247-48, 106 S. Ct. at 2510 (emphasis in original).  In opposing summary judgment, the non-moving party must produce evidence that "relies on more than a mere scintilla of evidence to withstand summary judgment."  *Hodgin v. UTC Fire & Sec. Americas Corp.,* 885 F.3d 243, 252 (4th Cir. 2018) (internal quotations omitted); *Wells Fargo Bank, N.A. v. Henson*, 649 F. Supp. 2d 431, 433 (D. Md. 2009) ("A mere 'scintilla' of evidence is insufficient to preclude summary judgment.").  It is the nonmoving party's burden to "convince the court that upon the record taken as a whole a rational trier of fact could not find for the nonmoving party."  *Austin v. Clark Equip. Co*., 48 F.3d 833, 836 (4th Cir. 1995).

When the complete record is reviewed here, AMBI's obligation to provide consulting services to SAC at no charge becomes clear, thus undercutting its claims in Count II that AMBI breached some obligation to pay it nearly a quarter of a million dollars for these consulting services.  Accordingly, SAC's motion for summary judgment as to Count II of AMBI's complaint is warranted.

### III.   ARGUMENT

SAC is entitled to summary judgment on Count II because AMBI has failed to proffer any credible evidence supporting its argument that it is entitled to payment for consulting services purportedly provided by it to SAC.  In this regard, the *only* support AMBI provides to support its position is a single line from Mr. Brown's deposition where he references an undated and unsubstantiated conversation with Mr. Schincariol where he purportedly told Mr. Schincariol that AMBI intended to charge SAC for these consulting services.  ECF 53-2 at 31.[6] AMBI, however, conspicuously omits the deluge of contradicting evidence starting with Mr. Brown's own testimony, where he concedes that AMBI never invoiced SAC for any of these consulting services, nor did he expect payment for such services. *See infra*.  Of course, this is no surprise, as the record makes clear that AMBI never charged, or intended to charge, SAC for any consulting services.

AMBI's position is also contradicted by its prior actions and discovery responses.  As discussed in detail, the testimony and dealings between the parties completely undermine AMBI's arguments.  Additionally, AMBI failed to identify this alleged conversation between Messrs. Brown and Schincariol in its answer to interrogatories; only further undermining its claims here. *See* AMBI's Answers to First Set of Interrogatories, Nos. 7, 11, and 15, attached hereto as **Exhibit 2**.  As a result, AMBI's attempt to avoid summary judgment should fail.

---

[6]     AMBI claims that Mr. Brown verbally told SAC that AMBI intended to charge for Mr. Brown's consulting services, and its only support is the following excerpt from Mr. Brown's deposition:

> Q: And in fact there's not a single communication between the parties where AMBI indicates that it was charging or planned on charging SAC any amounts for any of the support it was providing to SAC, correct?

> A: In this writing, no.  But in face-to-face with Jose [Schincariol], yes.

ECF 53-2 at 31.

**A. _The Record Contradicts AMBI's Attempt to Create a Dispute of Material Fact as to Count II._**

The record is replete with testimony and facts that undermine AMBI's failed attempt to create a genuine dispute of material fact on its unjust enrichment claim. As demonstrated below, Mr. Brown's own testimony, the dealings between AMBI and SAC, and the parties' understandings make clear that SAC is entitled to summary judgment on Count II.

            i.     _Mr. Brown's testimony._

AMBI's reliance on a single line from Mr. Brown's deposition regarding a purported conversation with Mr. Schincariol is the very definition of reliance on a mere scintilla of evidence to oppose summary judgment. When viewing the record as a whole, however, it becomes clear that a rational trier of fact could not find for AMBI on this issue. The record in this case abounds with evidence supporting SAC's position that it was not to be charged for any consulting services provided by AMBI to assist with the incorporation and manufacture of the gas piston system with SAC's rifles. Indeed, in contradiction to AMBI's current position that it is entitled to payment, Mr. Brown testified that the Agreement included engineering support:[7]

> Q: SAC would get product engineering support for the [entire life of the patent]. Correct?
>
> A: Yes.  [AMBI is an] engineering firm.  [AMBI] would support [SAC], engineering, engineering support, but this was based on paying the product off at one time.[8]

---

[7]    This testimony, along with Mr. Brown's other testimony discussed _passim_, also contradicts AMBI's position that the Agreement only contemplated the assignment of a patent.  The fact that AMBI provided substantial engineering services to SAC at no cost further supports SAC's position that successful integration and manufacture of the gas piston system onto SAC's rifle was integral to the parties' agreement.

[8]    AMBI highlights the portion of Mr. Brown's testimony where he stated that the engineering support was "based on paying the product off at one time." ECF 53-2 at 32.  It continues by making the unsupported assertion that the engineering support was conditioned on SAC making one lump-sum payment, concluding that "the engineering support was not included as part of the agreement between the parties, which is why such support is not referenced in the

ECF 49-6, 116:9-11.

Continuing his testimony, Mr. Brown confirmed that the Agreement and communications between AMBI and SAC do not contain a single reference to any amount being charged for engineering support or consulting services:

Q: There's no mention in there of charging for engineering support, correct?

A: There's no mention in there of prices or charging anything, yes.

Q: And there's no mention in the [Agreement] of charging for engineering support, correct?

A: That's correct.

Q: And there's no mention there of charging SAC for that manufacturing engineering support, correct?

A: Not in this email.[9]

Q: And there's nothing in the [Agreement] that indicates that SAC would be charged for engineering support, correct?

A: Correct.

*Id.* at 116:14 – 21; 117:1 – 11.  As Mr. Brown's own words establish, AMBI did not intend to charge SAC for any services provided by it in order for the purpose of the Agreement – incorporating the gas piston system onto SAC's rifles for manufacture – to be met.

---

Agreement itself." *Id.*  Notwithstanding the fact that AMBI failed to offer any support for these statements, the payment conditions are irrelevant to the instant dispute.  The reality is that the engineering support could not have been premised on making one lump-sum payment for the gas-piston system because the parties did not agree on that term, yet AMBI still provided the services *without invoicing SAC*.

9      The email that Mr. Brown references, attached hereto as **Exhibit 3**, is a June 25, 2018 email from Mr. Brown to Jason Kalua, SAC's former CEO. In this email, Mr. Brown lists services AMBI will provide as part of the Patent purchase transaction, including "[p]roduct engineering support for the patent life," and states "AMBI is committed to support *Strategic Arms Corp in every step of the process and promises to ensure a smooth transition from *start to full production*." (Emphasis added).

AMBI's attempt to create a dispute of material fact by relying on a single line from Mr. Brown's deposition testimony about an alleged conversation with Mr. Schincariol without any further details is also irreconcilable with the record and the remainder of Mr. Brown's testimony on the subject.  Indeed, all of Mr. Brown's testimony, other than the one line cited by Plaintiff, flatly contradicts his testimony about the alleged conversation with Mr. Schincariol:

> Q: And what did you say to [Mr. Schincariol] with regards to charging for engineering support?
>
> A: I stated to [Mr. Schincariol] that if [SAC] buys my patent I will gladly help him with product support.  I did not say I would charge him.  I did not give him a price.  All I said was I would help SAC with their processes.
>
> Q: Was there any other conversation with [Mr. Schincariol] or anybody else at SAC about the provision of support?
>
> A: No, sir.
>
> Q: Okay.  So in that April 23rd meeting you did not indicate that AMBI would charge for product support correct?
>
> A: No, sir, but I told him I would give him that support if he bought the patent.

*Id*. at 119:15 – 120:7.

Except for the one statement cited by the Plaintiff (and contradicted by other statements made by the Plaintiff's President), the evidence establishes that there is no genuine dispute of material fact that SAC was not unjustly enriched by Mr. Brown's provision of consulting services.  Despite many written communications produced in discovery—emails, texts, and even handwritten notes from phone conversations between Mr. Brown and Mr. Schincariol—there is not one word about charging SAC for Mr. Brown's consulting services.  As a result, AMBI's attempt to craft such a dispute cannot withstand summary judgment.

ii.     *The Dealings Between AMBI and SAC.*

In addition to Mr. Brown's testimony, the parties' dealings further support SAC's motion for summary judgment on Count II.  First, there is no dispute that AMBI never charged, or intended to charge, SAC for Mr. Brown's provision of consulting services.  Tellingly, to this day, AMBI has never sent SAC an invoice for consulting services:

> Q: Did AMBI ever send an invoice to SAC for any engineering support, manufacturing engineering support, product engineering support, or tooling, future design, and program process report?
>
> A: No, we didn't.
>
> *   *   *
>
> Q: You indicate here that you were asked by SAC to help with the manufacturing process for the upper receivers, that you developed a process, that you provided CAD solids and prints of tombstones and fixtures for the horizontals, and that that was done free of charge, right?
>
> A: Yes, sir.
>
> Q: And you never sent an invoice for that work, did you?
>
> A: No, sir.
>
> Q: And similarly the other services that you identify [] regarding the rail, handguard and barrel nut package, the piston design bolt carrier, and development of the prototypes, those were all done free of charge, correct?
>
> A: Yes, sir.
>
> Q: And you never sent an invoice for that, correct?
>
> A: That's correct.
>
> Q: And are you seeking payment for those services now in this case?
>
> A: Yes, sir.

ECF 49-6 at 118:13 – 17; 136:9 – 137:9.

SAC employees confirmed Mr. Brown's testimony.  For example, Jason Kalua, SAC's former CEO, testified:

Q: When Mr. Brown came out to provide engineering support, did he ever say to you, "hey Jason, I'm going to have to charge you for this?"

A: No.

Q: Did he ever send you an invoice for any of the consultation work or support that he provided?

A: No.

Q: Was it your understanding that SAC would be paying extra for the support that Mr. Brown and AMBI provided?

A: No.

ECF 49-4 at 135:21 – 136:12.  The record is clear: AMBI never intended to charge, and indeed, never did charge, SAC for Mr. Brown's consulting services.  As such, it cannot now claim that is it is owed hundreds of thousands of dollars for those services.

> iii.    *AMBI's and SAC's understandings.*

Second, both AMBI and SAC understood that SAC would not be charged for Mr. Brown's provision of services.  In his deposition testimony, Mr. Brown testified that he took pride in the gas piston system claimed in the Patent and that he would assist SAC to achieve its goal of incorporating it onto SAC's rifles at no charge.  In particular, during a conversation with Mr. Schincariol, where Mr. Schincariol indicated that the gas piston system was not working with SAC's rifles, Mr. Brown testified:

Q:   What did you say?

A:   I told him I would definitely [go to SAC's headquarters in Phoenix, Arizona]. I had interest in [SAC].

Q:   And why did you have an interest in [SAC]?

A:   I wanted them to be successful.

Q:   And you weren't going to make any more money whether or not they were successful or not, right?

A:   No.  But it's … my design that I wanted it to be successful….

Q:   Well, and in fact you had committed to providing engineering, product engineering and manufacturing support as part of the agreement, right?

A:   Yes, sir.

ECF 49-6 at 138:14 – 140:8.  All of this evidence collectively demonstrates two things: (i) that AMBI intended to, and in fact did, provide the consulting services to SAC at no additional charge and with no expectation of payment; and (ii) that successful incorporation of the gas piston system claimed in the Patent was an integral part of the parties' arrangement and understanding.  As such, SAC could not have been unjustly enriched by AMBI's provision of those services, and therefore, the entry of summary judgment on Count II of AMBI's complaint is warranted.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, and for the reasons set forth in SAC's original motion for summary judgment on Count II (ECF 49-1), SAC respectfully requests that this Court grant its motion for summary judgment on Count II of AMBI's Complaint for unjust enrichment.

Date: December 2, 2020

Respectfully submitted,

/s/ Steven E. Tiller
Steven E. Tiller (Bar No. 11085)
Timothy R. Willman (Bar No. 21088)
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202-1636
stiller@wtplaw.com
twillman@wtplaw.com
(410) 347-9425
(410) 223-4325

*Attorneys for Strategic Armory Corp LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify, that on this 2nd day of December, 2020, the foregoing was served via the

Court's CM/ECF filing system on:

> Gregory A. Dorsey, Esquire
> Kelly Dorsey, P.C.
> 10320 Little Patuxent Parkway
> Suite 608
> Columbia, Maryland 21044
> gdorsey@kellydorseylaw.com
>
> *Attorneys for Plaintiff*

/s/ Timothy R. Willman
Timothy R. Willman