IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AMBIMJB, LLC | * | |
|     Plaintiff | * | |
| v. | * | Case No.: 1:20-cv-00807-JKB |
| STRATEGIC ARMORY CORPS, LLC, | * | |
|     Defendant | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANT STRATEGIC ARMORY CORPS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THIS COURT'S CONTINUED JURISDICTION OVER PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT**

Defendant Strategic Armory Corps, LLC ("SAC"), by its undersigned counsel, respectfully submits this Response to the Supplemental Memorandum in Support of this Court's Continued Jurisdiction over Plaintiff's Claim for Unjust Enrichment filed by Plaintiff AMBIMJB, LLC ("AMBI"), and in support thereof, states:

### I.     INTRODUCTION

On March, 11, 2021, this Court entered an Opinion (ECF No. 55) (the "Opinion") and Order (ECF No. 56) (the "Order") granting Plaintiff's Motion for Summary Judgment (ECF No. 43) on its breach of contract claim and denying SAC's Cross-Motion for Summary Judgment (ECF No. 49) on Plaintiff's unjust enrichment claim. As a result, only Plaintiff's claim for unjust enrichment remains to be adjudicated.

AMBI's unjust enrichment claim arises out of consulting services that its president, Michael Brown ("Mr. Brown"), provided to assist SAC in its efforts to develop a gas piston system at scale, incorporate it onto rifles sold by SAC around the world, and to develop a kit such that prior purchasers of SAC-manufactured rifles could retrofit the gas piston system onto those rifles.

After purchasing the patent at issue in this matter, SAC experienced considerable problems attempting to engineer the gas piston system to adapt onto its rifles. *See* ECF No. 49-4 at 96:10 – 21 (SAC's former CEO testifying that SAC contacted Mr. Brown when they found out the gas piston system "didn't fit" and that Mr. Brown worked with the SAC team to assist SAC adapt the piston system onto its rifles). To this end, Mr. Brown traveled from Maryland to SAC's facility in Arizona to work with SAC's engineering team on this project. *Id.*; ECF No. 49-5 at 89:9 – 15; ECF No. 49-6 at 125:3 – 8. These efforts ultimately proved unsuccessful and SAC has not been able to manufacture or produce a rifle with the gas piston system adapted. ECF No. 49-3 at 129:9 – 21.

The parties never discussed payment for Mr. Brown's services. In his deposition, Mr. Brown repeatedly testified that the underlying patent purchase agreement made no mention of charging SAC for engineering support and that he never intended to charge SAC for his services. *See* ECF No. 49-6 at 116:16 – 21; 119:15 – 120:7 (Mr. Brown testifying about a conversation with Jose Schincariol ("Mr. Schincariol"), SAC's owner: "I stated to [Mr. Schincariol] that if [SAC] buys my patent I will gladly help him with product support. I did not say I would charge him."). Indeed, AMBI has never sent SAC an invoice for the consulting services, which are now the subject of AMBI's unjust enrichment claim. *Id.* at 118:13 – 17; *see also* ECF No. 49-4 at 136:5 – 8.

In light of the foregoing, the Court questioned its jurisdiction over the remaining unjust enrichment claim in the Opinion. It noted that "[t]his case was originally removed from state court on the basis of SAC's counterclaim that the Brown Patent is invalid, which has now been dismissed from the case." ECF No. 55 at p. 22 (internal reference omitted). "Although AMBI's claim for unjust enrichment remains viable, the disposition of the remaining claims and counterclaims raises

serious concerns about the Court's subject matter jurisdiction." *Id*. The Court questioned its continued jurisdiction over this matter, stating: "it is not clear that the only remaining claim meets the amount-in-controversy requirement, such that the Court may continue to exercise original jurisdiction on the basis of diversity of citizenship." *Id*. As such, the Court directed the parties to "submit evidence that AMBI's unjust enrichment claim satisfies the amount-in-controversy requirement. They may also address the question of whether and why—if the Court finds it lacks diversity jurisdiction—the Court should nonetheless continue to exercise supplemental jurisdiction over this claim." *Id*. at p. 23.

AMBI submitted its memorandum on this issue on April 1, 2021 (ECF No. 57) (the "Supplemental Memorandum"). In its Supplemental Memorandum, AMBI contends that it conferred benefits worth over $75,000 upon SAC, so this Court should continue to exercise jurisdiction as the amount-in-controversy exceeds the threshold for the Court to maintain jurisdiction. As discussed *infra*, however, AMBI failed to respond to the Court's directive to *submit evidence* that its remaining unjust enrichment claim meets the amount in controversy threshold. Additionally, AMBI did not confer any benefit upon SAC, let alone a benefit exceeding $75,000 in value. The only arguable benefit provided by AMBI to SAC arose out of the sale of the patent pursuant to the underlying contract, not the services provided by Mr. Brown which form the basis of the unjust enrichment claim. Additionally, AMBI failed to meet its burden to demonstrate that this Court should continue to exercise supplemental jurisdiction even if the amount-in-controversy is less than $75,000.

## II. ARGUMENT

### A. AMBI's Claim for Unjust Enrichment Fails to Satisfy the Amount-in-Controversy Requirement of 28 U.S.C. § 1446(c)(2)(B).[1]

AMBI's Supplemental Memorandum fails to comply with the Court's directive to *submit evidence* that the remaining unjust enrichment claim satisfies the amount-in-controversy requirement of 28 U.S.C. § 1446(c)(2)(B). ECF No. 55 at p. 23. Indeed, the Supplemental Memorandum fails to put forth any evidence that AMBI's claim satisfies the $75,000 amount-in-controversy threshold, let alone evidence supporting the claimed value of $222,000.

In attempting to support its position, AMBI conflates certain topics by arguing that the ability to sell rifles with the gas piston system at issue was a benefit conferred by it on SAC for purposes of its unjust enrichment claim. This position is simply inaccurate. Instead, if any benefit was conferred on SAC, it was the sale of the gas piston system invention claimed in the patent, done pursuant to a contract, which arguably conferred this benefit on SAC. AMBI does not explain how Mr. Brown's engineering services conferred any benefit on SAC, nor does AMBI provide any evidence, other than bald and unsupported allegations, that the value of these services were worth over $75,000 to SAC.

---

[1] AMBI references a potential award of attorneys' fees to satisfy the amount-in-controversy threshold. ECF No. 57 at pp. 13-15. Potential attorneys' fees should not be taken into account by the Court for purposes of determining the amount-in-controversy. *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368 (4th Cir. 2013) (making clear that attorneys' fees should not be taken into account to determine whether a case based on diversity jurisdiction meets the amount-in-controversy threshold except "(1) if the fees are provided for by contract; or (2) if a statute mandates or allows payment of attorney's fees."). Plaintiff's unjust enrichment claim does not arise out of contract or statute, so any claim for fees must not be included in the amount-in-controversy calculation. Additionally, AMBI references prejudgment interest, ECF No. 57 at pp. 13-14, which is also excluded from an amount-in-controversy calculation. *See* 28 U.S.C. § 1332; *Delph v. Allstate Home Mortg., Inc.*, 478 F. Supp. 2d 852, 854 (D. Md. 2007) ("the language of the diversity jurisdiction statute makes clear that the jurisdictional minimum is *exclusive* of interest and costs.") (emphasis in original).

4

> i. AMBI failed to comply with the Court's directive to submit evidence that the unjust enrichment claim satisfies the amount-in-controversy threshold.

This Court ordered the parties to "submit evidence that AMBI's unjust enrichment claim satisfies the amount-in-controversy requirement." ECF No. 55 at p. 23. AMBI failed to comply, as its Supplemental Memorandum does not offer any evidence quantifying the alleged value of Mr. Brown's services. In particular, AMBI's Supplemental Memorandum fails to identify the number of hours provided, the nature of the services provided, the value of those services, or that the parties agreed that AMBI would charge for those services. Without such information, it is simply impossible to know the value to SAC of the services allegedly provided by AMBI. Additionally, AMBI failed to offer any evidence that had SAC known that it would have to pay for Mr. Brown's engineering services, that it nonetheless would have asked AMBI to provide such services. Put simply, this Court asked AMBI to submit evidence to establish the alleged value of the services Mr. Brown provided to SAC, and AMBI responded with virtually no evidence regarding the nature and extent of these services.

The record makes clear that AMBI never intended to charge SAC for Mr. Brown's consulting services. Mr. Brown explicitly testified that throughout the course of the parties' dealings, AMBI committed to providing SAC with manufacturing engineering support without any intention to charge for such services:

> Q: There's no mention there of charging for engineering support, correct?
>
> A: There's no mention in there of prices or charging anything, yes.
>
> Q: And there's no mention in the patent purchase agreement of charging for engineering support, correct?
>
> A: That's correct.
>
> Q: And in this email AMBI is also committing to providing SAC with manufacturing engineering support, correct?

5

> A: That's correct.
>
> Q: And there's no mention of charging SAC for that manufacturing engineering support, correct?
>
> A: Not in this email.
>
> Q: And there's nothing in the patent purchase agreement that indicates that SAC would be charged for manufacturing engineering support, correct?
>
> A: Correct.

ECF No. 49-6 at 116:14 – 117:12.  Contrary to AMBI's current position that it is entitled to unjust enrichment damages, Mr. Brown testified that he did not indicate to SAC's president, Mr. Schincariol, that AMBI intended on charging for any engineering services:

> Q: And what did you say to [Mr. Schincariol] with regards to charging for engineering support?
>
> A: I stated to [Mr. Schincariol] that if [SAC] buys my patent I will gladly help him with product support.  I did not say I would charge him.  I did not give him a price.  All I said was I would help SAC with their processes.
>
> Q: Was there any conversation with [Mr. Schincariol] or anybody else at SAC about the provision of support?
>
> A: No sir.
>
> Q: Okay.  So in that April 23rd meeting you did not indicate that AMBI would charge for product support, correct?
>
> A: No, sir, but I told him I would give him that support if he bought the patent.

*Id.* at 119:15 – 120:7; *accord* **Exhibit 1**, Dale Wallace Deposition Transcript Excerpt at 97:13 – 20 ("Q: Did Mr. Brown ever indicate to you that AMBI would be charging SAC or invoicing SAC for those services?  A: …He had never mentioned any invoicing to me; and the way it was

explained to me from [SAC's former CEO] was – that was part of the purchase agreement, was having support for the AMBI system.").[2]

To this day, AMBI has not invoiced SAC for any of Mr. Brown's services. *See* ECF No. 49-6 at 118:13 – 17 ("Q: Did AMBI ever send an invoice to SAC for any engineering support, manufacturing engineering support, product engineering support, or tooling, future design, and program process support?  [Mr. Brown]: No, we didn't.").  Indeed, Jason Kalua ("Mr. Kalua"), SAC's former CEO and the only SAC employee to be involved in the patent purchase negotiations, testified that Mr. Brown never mentioned charging for engineering support, nor did he ever send an invoice for such services:

> Q: Okay.  When Mr. Brown came out to provide engineering support, did he ever say to you, "hey, Jason, I'm going to have to charge you for this?"
> A: No.
>
> Q: Did he ever send you an invoice for any of the consultation work or support that he provided?
> A: No.

ECF No. 49-4 at 135:21 – 136:8.  The evidence is clear that AMBI never intended to separately charge SAC for Mr. Brown's services, nor did it ever invoice SAC for those services.  As such, to the extent that Mr. Brown's services provided SAC with any value, that value was provided pursuant to the contract at issue; the very contract that formed the basis of AMBI's breach of contract claim which is no longer a part of this case.

---

[2]   Mr. Wallace was SAC's Head of Quality Control and was responsible for inspecting and ensuring that all SAC firearms met the company's rigorous quality standards. ECF No. 49-1 at p. 7. Mr. Wallace worked with Mr. Brown to attempt to engineer the gas piston system so that it could fit onto SAC's rifles.

     ii.  AMBI did not confer any benefit on SAC and its arguments conflate the sale of the patent with Mr. Brown's gratuitous consulting services.

  AMBI's Supplemental Memorandum is premised on a flawed understanding of the concept of unjust enrichment and a conflation of the sale of the patent with the services allegedly provided by Mr. Brown. Maryland law is clear that "[t]he measure of damages in an unjust enrichment claim is the value of the goods or services rendered by the plaintiff in the hands of the defendant." *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 599 (D. Md. 2018); *Washington Cty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698, 717–18 (D. Md. 2020) ("[T]he classic measurement of unjust enrichment damages is the gain to the defendant, not the loss by the plaintiff."). The record here establishes that, despite the efforts by both parties, the parties were unable to engineer the gas piston system so that it could be manufactured, incorporated onto SAC's rifles, and sold at scale.[3] In other words, Mr. Brown's ultimately unsuccessful efforts to assist SAC in engineering the gas piston system provided no benefit to SAC because the patent ultimately amounted to a piece of intellectual property with nominal value as SAC was unable to do anything with the invention claimed in it. To use the Court's terminology, the "commercial failure" of the patent rendered the value of Mr. Brown's efforts to successfully commercialize the patent nominal, at best. As a result, AMBI's unjust enrichment claim fails the amount-in-controversy requirement of 28 U.S.C. § 1446(c)(2)(B) and fails substantively because SAC did not receive any gain from Mr. Brown's purported services.

---

[3]  AMBI's insinuation that SAC successfully developed a gas piston system for its rifles yet chose not to manufacture and sell the system defies both common sense and the totality of the evidence in the record. The reality is that the parties were able to engineer and modify a single gas piston system to fit onto an SAC rifle, but the system was unreliable and unable to be manufactured at scale. *See* Ex. 1 at 63:3 – 8 ("Q: Did there come a time when SAC actually tested the SAC piston fully adapted onto an SAC rifle? A: Modified one that we – I had modified with Mike Brown. I think that was the only one that we were ever able to test and shoot. I think some of my other testing ones ultimately failed, but that wasn't – yeah, they ultimately failed.").

Throughout its Supplemental Motion, AMBI conflates any benefits conferred upon SAC from the sale of the patent with alleged benefits from Mr. Brown's provision of consulting services. Specifically, AMBI contends: "The benefits Plaintiff conferred upon Defendant in sharing its *ideas and intellectual property* in connection with the Defendant's use and integration of the Brown Patent into its business and product offerings far exceed the plain value of Plaintiff's engineering and consulting services." ECF No. 57 at p. 7 (emphasis added). As this excerpt makes clear, even under AMBI's theory, any benefit or value gained by SAC resulted from its acquisition of the patent and the invention claimed therein; not any services provided by AMBI.

AMBI also attempts to inject wholly irrelevant evidence, such as SAC internal meetings and estimates of profits on sales of firearms equipped with the gas piston system contemplated in the patent. Specifically, AMBI references a "Financial Assessment" by SAC's Chief Controller Officer, outlining estimated revenue from two families of rifles. *See* ECF No. 57 at p. 9. The data and projections in this report were premised on the assumption that the rifles include the gas piston system; an assumption that never materialized. In essence, AMBI appears to argue that this Court should focus on the *potential value* of selling rifles incorporating the gas piston system claimed in the invention in determining whether the jurisdictional threshold has been met.[4] This argument misses the point.

If AMBI provided SAC with "the value" of selling rifles with gas piston systems (a value which SAC still disputes), that "value" was provided by the sale of the patent and the invention claimed therein; not the provision of any services. AMBI should not be permitted to rely on the sale of the patent as the basis of its argument that the $75,000 amount-in-controversy threshold has been reached since AMBI's breach of contract claim has already been ruled on by the Court,

---

[4] To be clear, SAC has not sold a single rifle with the gas piston system incorporated, nor has it sold a single stand-alone gas piston system kit.

and thus, is no longer a part of this case. Arguing that the sale of the patent provides a basis to assert that the amount-in-controversy threshold has been met is illogical, as the only remaining disputes are whether SAC was unjustly enriched by Mr. Brown's provision of services and, if so, the value of those services.

### B. This Court Should Decline to Continue to Exercise Supplemental Jurisdiction over AMBI's Unjust Enrichment Claim.

Trial courts enjoy considerable latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished. *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). The party seeking to avail itself of the court's jurisdiction, however, bears the burden of proof. *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010). In evaluating whether to retain jurisdiction when the amount in controversy falls below $75,000, courts should consider the following factors: "(1) an evaluation of the convenience and fairness to both parties if the case is kept or dismissed, taking into consideration the interests of judicial economy; (2) whether the amount claimed in the complaint was made in good faith, or whether the plaintiff was consciously relying on flimsy grounds to file in federal court; (3) whether the state statute of limitations would bar refiling the action in state court if dismissed; (4) the amount of time and energy that the federal court already has expended in connection with the case, and whether it might be more efficient to just keep it; (5) whether the case presents some significant issue of state law best decided in state court." *Ecology Servs., Inc. v. GranTurk Equip., Inc.*, 443 F. Supp. 2d 756, 764 (D. Md. 2006).

Here, AMBI argues that regardless of whether the $75,000 amount in controversy threshold has been met, this Court's should nonetheless retain jurisdiction over this matter. In support, AMBI posits, "should this Court remand to state court Plaintiff's unjust enrichment claim, the case will be in a procedural quagmire before the Circuit Court for Baltimore County, Maryland." ECF

No. 57 at p. 13. Notwithstanding this protestation, AMBI fails to explain what "procedural quagmire" remand will cause or even why the case would end up in any quagmire. On the contrary, the Circuit Court for Baltimore County is well-equipped to preside over a one-count complaint under Maryland law for unjust enrichment. Indeed, as the Court is aware, the Plaintiff originally filed its breach of contract and unjust enrichment claims in that very court.

The additional factors to be considered weigh in favor of this Court declining to exercise its supplemental jurisdiction. First, there is no evidence that any inconvenience or unfairness to either party will occur if this Court remands the case to the Circuit Court. The remaining claim is a state law claim that will be adjudicated in the Circuit Court for Baltimore County; a court well equipped to handle this type of claim. Second, AMBI relies on flimsy grounds in asserting its entitlement to unjust enrichment damages—AMBI has not even attempted to quantify the value of Mr. Brown's services by identifying the number of hours, the value of those hours, or any evidence that the parties agreed upon those services being rendered in support of its claims.[5] *Supra*. Third, the applicable statute of limitations is no bar to refiling this matter in state court. Fourth, although this Court has expended time and energy in connection with this case, it was primarily related to AMBI's breach of contract claim, and SAC's defenses thereto, upon which the Court has already ruled. The remaining unjust enrichment claim is, for the most part, unrelated to those issues. Fifth, unjust enrichment is a state law claim, and thusly, a state law issue which can certainly be decided

---

[5]  In apparent support of its $222,000 damage figure, AMBI contends that SAC "presents no evidence to refute the claimed value of Plaintiff's services." ECF No. 57 at p. 12. This statement flips the burden of proof on its head, as the party claiming damages bears the burden of proving its entitlement to, and the value of, such damages. *See Brock Bridge Ltd. P'ship v. Dev. Facilitators, Inc.*, 114 Md. App. 144, 157 (1997) (stating that it is the plaintiff's burden "to adduc[e] sufficient evidence from which the amount of damages can be determined on some rational basis and other than by pure speculation or conjecture."); *Ass'n of Maryland Pilots v. Baltimore & O. R. Co.*, 304 F. Supp. 548, 557 (D. Md. 1969) ("every plaintiff claiming damages has the burden of proof to present sufficient evidence from which damages can be determined on some rational basis and other than by pure speculation and conjecture.").

in state court. As a result, there is simply no reason that this Court should retain jurisdiction over this matter.

### III.  CONCLUSION

In conclusion, AMBI's remaining unjust enrichment claim fails to satisfy the amount-in-controversy threshold; accordingly, SAC respectfully requests this Court to decline to exercise supplemental jurisdiction over it.

Date: April 22, 2021                                  Respectfully submitted,

/s/ Steven E. Tiller
Steven E. Tiller (Bar No. 11085)
Timothy R. Willman (Bar No. 21088)
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202-1636
stiller@wtplaw.com
twillman@wtplaw.com
(410) 347-9425
(410) 223-4325

*Attorneys for Strategic Armory Corp LLC*

**CERTIFICATE OF SERVICE**

I hereby certify, that on this 22nd day of April, 2021, the foregoing was served via the Court's CM/ECF filing system on:

> Gregory A. Dorsey, Esquire
> Kelly Dorsey, P.C.
> 10320 Little Patuxent Parkway
> Suite 608
> Columbia, Maryland 21044
> gdorsey@kellydorseylaw.com
>
> *Attorneys for Plaintiff*

                                             /s/ Timothy R. Willman
                                           Timothy R. Willman