**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
(Northern Division)

| | |
|---|---|
| AMBIMJB, LLC, | * |
| | * |
|    *Plaintiff/Counter-Defendant* | * |
| | * Civil Case Number: 1:20-cv-00807-JKB |
| v. | * |
| | * |
| STRATEGIC ARMORY CORPS, LLC, | * |
| | * |
|    *Defendant/Counter-Plaintiff* | * |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THIS COURT'S CONTINUED SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT**

Plaintiff AMBIMJB, LLC ("Plaintiff" or "AMBI"), by and through undersigned counsel, respectfully submits this reply memorandum in support of this Court's continued subject matter jurisdiction over Plaintiff's claim for unjust enrichment.[1]

### I. Plaintiff Has Submitted Evidence Demonstrating Defendant Received a Benefit From the Additional Services In Excess of $75,000

Defendant contends that Plaintiff did not "put forth any evidence that AMBI's claim satisfies the $75,000 amount-in-controversy threshold, let alone evidence supporting the claimed value of $222,000" and that Plaintiff "conflates" the benefit of Plaintiff's manufacturing and engineering services to Defendant with the benefit of "the sale of the gas piston system invention

---

[1] Defendant's Response to Plaintiff's Supplemental Memorandum fails to address Plaintiff's argument that this Court retains subject matter jurisdiction to consider Plaintiff's claim for attorney's fees under 35 U.S.C.A. § 285 (Doc. 57 at 13-15). Rather, Defendant argues that Plaintiff is attempting to assert potential attorney's fees "for purposes of determining the amount-in-controversy," (Doc. 58 at 4 n. 1), which is incorrect, as argued *infra*. The Court should accordingly retain subject matter jurisdiction on this ground, regardless of whether the Court continues to assert subject matter jurisdiction over Plaintiff's unjust enrichment claim.

1

claimed in the patent." (Doc. 58 at 4.) Defendant's contention, however, is refuted by several facts that have already been established before the Court.

First, the Defendant requested Mr. Brown to provide the additional engineering and consulting services ***after*** the Parties entered into the Agreement, and ***after*** Defendant had encountered difficulty in adapting the gas piston system to its rifles, which led to Plaintiff agreeing to provide the Additional Services. (Doc. 43-2 at 7 (citing Ex. 3, Kalua Dep. 95:12-97:9.)) Had the Agreement and attendant transfer of the Brown Patent necessarily contemplated the benefits and value of the assembly and engineering application of the patent to goods and the sale of goods, then Defendant would not have separately requested Plaintiff to provide the Additional Services. As Defendant states, "[t]he remaining unjust enrichment claim is, for the most part, unrelated to those issues [Plaintiff's breach of contract claim and Defendant's defenses thereto]." (Doc. 58 at 11.) Moreover, Plaintiff claims – and Defendant has not effectively disputed – the Additional Services extend beyond adapting the gas piston system to Defendant's rifles to "Defendant's overall manufacturing processes…" (Doc. 57 at 5-6 (citing Ex. 5, Brown Dep. 120:17-121:21.)) Thus, the benefits of the Agreement and attendant transfer of the Brown Patent do not envelop or nullify the benefits that Defendant obtained in accepting the Additional Services. *See, Hill v. Cross Country Settlements, LLC,* 402 Md. 281, 298, 936 A.2d 343, 353 (2007) ("[a]lthough the consummation of the real estate closing did not constitute a conveyance of a benefit to Hill by Cross Country for the purposes of analysis of an unjust enrichment claim, the events alleged to have occurred subsequent to the closing may support a conclusion that a benefit was conferred.")

Second, the Agreement did not expressly confer to Defendant the benefit of being able to assemble, engineer, or commercialize the gas piston system. Rather, the Agreement provides Defendant all of Plaintiff's "right, title and interest in, to and under United States Letters Patent

2

No. 9,816,769, issued November 14, 2017 ('the Patent')."; *see, Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 92, 132 S. Ct. 1289, 1305, 182 L. Ed. 2d 321 (2012) ("that very exclusivity [of a patent] can impede the flow of information that might permit, indeed spur, invention, by, for example, raising the price of using the patented ideas once created, requiring potential users to conduct costly and time-consuming searches of existing patents and pending patent applications, and requiring the negotiation of complex licensing arrangements.") For instance, Defendant could sell, transfer, or license the Brown Patent to a third party without ever applying the Brown Patent to its products. Again, had the Agreement provided the benefit of assembly, engineering, or commercialization, the Agreement would have indicated as much and Defendant would not have had to separately request the Additional Services.

Third, Defendant's argument that Plaintiff's provision of the Additional Services was "voluntary" is not supported by the facts. "[O]ne who confers a benefit upon another ***without affording that other the opportunity to reject the benefit***, has no equitable claim for relief against the recipient of the benefit in the absence of some special policy...." *Hill*, 402 Md. at 296 (quoting DANIEL B. DOBBS, HANDBOOK ON THE LAW OF REMEDIES § 4.9 (1973) (emphasis supplied). As noted above and in Plaintiff's Motion for Summary Judgment, Defendant *requested* Plaintiff to provide the Additional Services, which prompted Plaintiff to accept the request and provide the Additional Services to Defendant. Even assuming *arguendo* that Defendant did not request the Additional Services, Defendant *still* had the opportunity to reject the Additional Services. For instance, Plaintiff expended a significant amount of time and resources in connection with the Additional Services, including traveling to Defendant's manufacturing site, working with Defendant's employees on improvement of Defendant's manufacturing processes, products, and other tasks. (Doc 43-2 at 7 (citing Exhibit 4, Brown Dep. 111:12-112:13.)) During this time

period, Defendant could have informed Plaintiff that it was no longer interested in the Additional Services.

Defendant argues, "AMBI's Supplemental Memorandum fails to identify the number of hours provided, the nature of the services provided, the value of those services, or that the parties agreed that AMBI would charge for those services. Without such information, it is simply impossible to know the value to SAC of the services allegedly provided by AMBI." (Doc. 58 at 5.)  However, this is belied by the contents of Plaintiff's Supplemental Memorandum.  In Exhibit 1 to Plaintiff's Supplemental Memorandum, Plaintiff itemized the number of hours provided (no less than 1,480 hours), the nature of the services provided, and the monetary value of each of the Additional Services provided (the hourly rate of $150 multiplied by the number of hours expended providing the Additional Services).  (Doc. 57-1 at 6-9.)   Therefore, Plaintiff has provided a monetary value for each of the Additional Services that Plaintiff conferred onto Defendant, which adds up to $222,000.  (*Id.*); *see, Dolan v. McQuaide*, 215 Md. App. 24, 40, 79 A.3d 394, 403 (2013) ("[f]air market value and actual value are not mutually exclusive, and a fact-finder can use the former as evidence of the latter.")

Defendant argues, "The record makes clear that AMBI never intended to charge SAC for Mr. Brown's consulting services."  (Doc. 58 at 5.)  This argument, however, misses the mark for two reasons.  First, Defendant mischaracterizes how the parties valued the Additional Services; as Mr. Brown testified he would provide Mr. Schincariol with the Additional Services "if he bought the patent" during a time when the parties were discussing a potential agreement that had a different payment structure than what was ultimately included in the Agreement.  (ECF 49-6 119:15 – 120:7.)

4

Second, Maryland law does not require a showing that a plaintiff requested payment for services provided to sustain an unjust enrichment claim; rather, the elements of an unjust enrichment claim are "1. A benefit conferred upon the defendant by the plaintiff; 2. An appreciation or knowledge by the defendant of the benefit; and 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Hill*, 402 Md. at 295 (internal citation omitted). "[U]njust enrichment arises from actions that do not imply *definite terms*." *Dolan*, 215 Md. App. at 37 (emphasis in original). "The restitution claim ... is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep." *Id.* at 296 (internal quotation marks and citation omitted). Here, Defendant received high-level manufacturing and engineering services for the application of the Brown Patent and improvement of Defendant's overall manufacturing processes, which Defendant had agreed to purchase, over the course of several weeks, valued at approximately $222,000. Defendant **undoubtedly** accepted and retained a substantial benefit from Plaintiff's provision of the Additional Services, regardless of whether Plaintiff ever requested payment for the same; Defendant could have rejected the Additional Services, but instead requested and accepted hundreds of thousands of dollars' worth of high-level manufacturing and engineering services and instruction from Plaintiff.

Defendant argues that Defendant obtained no benefit from Plaintiff because it did not commercialize the Brown Patent. (Doc. 58 at 8.) This argument, however, is irrelevant for two reasons. First, multiple videos that demonstrate Defendant's successful adaptation of the gas piston system to its rifles (*see* AMBI Mot. Summ. J. Exs. 12-18, ECF No. 43-15-21), and Defendant produced a report dated April 1, 2019 that details Defendant's continued, successful testing of its own rifles with the adapted gas piston system (the "Test Report"). (*Id.* at Ex. 8, ECF

No. 43-11.) Even if Defendant chose not to commercialize its rifles with the successful adaptation of the gas piston system, Defendant may do so at a later time and reap substantial profits. Therefore, the "Financial Assessment" of the value that Defendant calculated it would obtain by selling rifles with the adapted gas piston system is directly relevant to the actual value that Defendant obtained from the benefit of the Additional Services. (Doc. 57 at 8-9 (citing Exhibit 8 at 4.)) Additionally, Defendant ignores the fact that the Additional Services extended to Defendant's overall manufacturing process, not just to the gas piston system.

Second, it is apropos Defendant seizes upon this Court's comment concerning the "commercial failure of the Brown Patent" in the context of Plaintiff's unjust enrichment claim when even in instances of a "defective product" or "misdirected work" – neither of which is applicable here – a plaintiff can sustain a claim for unjust enrichment. *Dolan*, 215 Md. App. At 40 (citing *Loyal Erectors, Inc. v. Hamilton & Son, Inc.*, 312 A.2d 748, 756 (Me.1973) ("as a condition precedent to his right to recover [for unjust enrichment], the contractor must make out a *prima facie* case that the fair market value of his defective product shows that the result of his labor was of some value to the other party") and *26 Williston on Contracts* § 68:38 ("[t]o make out a case for recovery for such work and materials so furnished, [a contractor] must prove how much the result of his work had benefited the defendant; he must prove what the fair market value of the thing produced by his misdirected work is; and until he has done that he has not made out even a *prima facie* case on which he is entitled to recover anything.")). Indeed, the Brown Patent is a commercial success as Plaintiff sold the patent to Defendant for $2,500,000. It is of no moment that Defendant was unable to adapt the gas piston system to its rifles, whether due to Defendant's incompetence or other reasons, as the Court may use evidence of fair market value of the Additional Services because "[f]air market value and actual value are not mutually exclusive, and

6

a fact-finder can use the former as evidence of the latter." *Id.* Here, Defendant has received, but not paid for, the reasonable value of approximately $222,000 in Additional Services from Plaintiff, regardless of whether Defendant commercializes the gas piston system. (Doc. 57-1 at 6-9.)

Defendant argues, "AMBI references a potential award of attorneys' fees to satisfy the amount-in-controversy threshold." (Doc. 58 at 4 n.1.) This, however, is false: Plaintiff argues, "[e]ven if this Court were to remand Plaintiff unjust enrichment claim to state court, this Court would retain subject matter jurisdiction to consider the Attorney Fee Motion" – i.e., the Court would not have to include attorney's fees in the amount-in-controversy calculation to retain supplemental jurisdiction. (Doc. 57 at 15.) In support of its argument, Plaintiff cites *Samsung Electronics Co., Ltd. V. Rambus, Inc.*, 398 F. Sup. 2d 470, 483-84 (E.D. Va. 2005), in which the U.S. Eastern District of Virginia held that its determination that the Court did not have jurisdiction over a fee claim under 35 U.S.C.A. § 285 did "not deprive the Court of jurisdiction to consider Samsung's claim for attorney's fees." (Doc. 57 at 15.) Although Defendant cites *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368 (4th Cir. 2013) to argue that "attorneys' fees should not be taken into account by the Court for purposes of determining the amount-in-controversy," Defendant fails to address Plaintiff's argument and fails to distinguish *Samsung Electronics*. (Doc. 58 at 4 n.1.)

Moreover, "generally, attorney's fees are not included in the amount-in-controversy calculation, but courts have created two exceptions to this rule: '(1) if the fees are provided for by contract; or (2) if a statute mandates or allows payment of attorney's fees.'" *Francis*, 809 F.3d at 368 (quoting 15–102 *Moore's Federal Practice, Civil* § 102.106(6)(a)). Here, because 35 U.S.C.A. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the

7

prevailing party," the Court may include Plaintiff's attorney's fees in the amount-in-controversy calculation.

Finally, Defendant mischaracterizes Plaintiff's argument that Defendant "presents no evidence to refute the claimed value of Plaintiff's services," (Doc. 57 at 12), as "flip[ping] the burden of proof on its head, as the party claiming damages bears the burden of proving its entitlement to, and the value of, such damages." (Doc. 58 at 11 n. 5.) Removal from state to federal court is proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)". 28 U.S.C. § 1446(c)(2)(B). When the amount in controversy is disputed, "the district court must make findings of jurisdictional fact to which the preponderance standard applies." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014) (quoting H.R.Rep. No. 112–10, at 16 (2011)). The removing party bears the "burden of demonstrating by competent proof that the complete-diversity and amount-in-controversy requirements are met." *Osia v. Rent-a-Ctr., Inc.*, CIV.A. DKC 15-1200, 2015 WL 3932416, at *5 (D. Md. June 25, 2015) (internal quotation marks and citations omitted). "[T]he removing defendant, as proponent of federal jurisdiction, must establish what the plaintiff stands to recover. We have suggested several ways in which this may be done—by contentions, interrogatories or admissions in state court, by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands. The list is not exclusive; any given proponent of federal jurisdiction may find a better way to establish what the controversy between the parties amounts to, and this

demonstration may be made from either side's viewpoint." *Id.* (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir.2008)).

Here, Plaintiff has met the burden of demonstrating by competent proof that the amount-in-controversy requirement is met. For instance, Plaintiff has provided an Interrogatory Answer itemizing the number of hours provided (no less than 1,480 hours), the nature of the services provided, and the monetary value of each of the Additional Services provided (the hourly rate of $150 multiplied by the number of hours expended providing the Additional Services). (Doc. 57-1 at 6-9.) Therefore, Plaintiff has provided, under oath and the penalties of perjury, a monetary value for each of the Additional Services that Plaintiff conferred onto Defendant, which adds up to $222,000. (*Id.*); *see, Dolan v. McQuaide*, 215 Md. App. 24, 40, 79 A.3d 394, 403 (2013) ("[f]air market value and actual value are not mutually exclusive, and a fact-finder can use the former as evidence of the latter.") Thus, Plaintiff has provided sufficient competent evidence as stated in *Osia* and *McPhail*. Defendant has not provided *any* evidence that would tend to negate the evidence that Plaintiff has established.

Accordingly, Plaintiff has provided evidence establishing all elements of its unjust enrichment claim, and that the value of the Additional Services exceeds $75,000. Therefore, this Court may exercise supplemental jurisdiction over Plaintiff's unjust enrichment claim.

II. **Even Assuming *Arguendo* the Amount-in-Controversy Requirement is Not Met, the Court Should Exercise Supplemental Jurisdiction Over Plaintiff's Unjust Enrichment Claim.**

In arguing that the Court should not exercise supplemental jurisdiction over the unjust enrichment claim, Defendant provides *no* reason or argument as to why remand of the unjust enrichment claim to state court would be fair, efficient, or in the best interest of justice. Rather, Defendant cites *Ecology Servs., Inc. v. GranTurk Equip., Inc.*, 443 F. Supp. 2d 756, 764 (D. Md.

9

2006) and relies on the *Shanaghan* factors stated therein. However, *Ecology* supports Plaintiff's argument. The District Court held:

> First, fairness to the parties and judicial economy favor this Court retaining jurisdiction, as the parties have fully briefed summary judgment in this case. Second, this Court does not find that the amount claimed in the Complaint was made in bad faith. Third, even though it appears that the statute of limitations does not prohibit Plaintiff from filing this action in state court, this factor alone does not necessitate this Court declining to exercise jurisdiction in this case. Fourth, this Court has already expended energy in connection with this case, having already ruled on one other pre-trial motion. Fifth, although this case presents issues of state contract law, it does not appear that the issues are particularly significant. Therefore, this Court is equipped to address the substantive state law questions at issue. After weighing the *Shanaghan* factors, this Court, in the exercise of its discretion, will retain jurisdiction in this case, even assuming that subsequent events have reduced the amount in controversy below $75,000.

*Id.* at 766-67.

Here, applying the *Shanaghan* factors, (1) the litigation has progressed even farther than in *Ecology*, as the Court has already entered summary judgment in Plaintiff's favor and the Parties have submitted supplemental briefing. Therefore, fairness and judicial economy favor this Court retaining jurisdiction over the unjust enrichment claim; (2) the unjust enrichment claim was made in good faith, as it is undisputed that Plaintiff provided Defendant with the Additional Services, that Defendant made no payment towards the Additional Services, and the value Plaintiff attached to the Additional Services (Doc. 57-1 at 6-9) is accurate; (3) even if the statute of limitations does not prohibit remand to the state court, it would still be fair and in the best interests of justice for the District Court to retain jurisdiction over this action; (4) the District Court has already spent substantial time and energy in connection with this action, having granted Plaintiff summary judgment and having denied Defendant's Motion for Summary Judgment and entering a number

10

of other orders and filing in this action; and (5) the unjust enrichment claim is not particularly complex, and the District Court is well-equipped to adjudicate the same.

Therefore, the Court should retain supplemental jurisdiction over this action.

Respectfully submitted,

KELLY DORSEY, P.C.

Dated: May 3, 2021           By: */s/ Gregory A. Dorsey*
Gregory A. Dorsey (Federal Bar No. 25218)
10320 Little Patuxent Parkway, Suite 608
Columbia, Maryland 21044
Tel: (410) 740-8750; Fax: (443) 542-0069
gdorsey@kellydorseylaw.com

*Attorneys for AMBIMJB, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Reply Memorandum was served on May 3, 2021, via the Court's electronic filing system upon:

Steven E. Tiller
stiller@wtplaw.com
Timothy R. Willman
twillman@wtplaw.com
WHITEFORD, TAYLOR & PRESTON, L.L.P.
7 Saint Paul Street, Suite 1500
Baltimore, Maryland 21202
(410) 347-8700

*Attorneys for Strategic Armory Corps, L.L.C.*

           */s/ Gregory A. Dorsey*