IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **AMBIMJB, LLC,** | * | |
| **Plaintiff,** | * | |
| v. | * | |
| | | **CIVIL NO. JKB-20-0807** |
| **STRATEGIC ARMORY CORPS, LLC,** | * | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

On March 12, 2021, this Court granted summary judgment on a breach of contract claim in this dispute, and ordered both parties to provide supplemental briefing regarding this Court's jurisdiction over the remaining state law claim of unjust enrichment. (ECF No. 56.) Now before the Court are the parties' supplemental memoranda regarding whether Plaintiff AMBIMJB, LLC's remaining unjust enrichment claim satisfies the amount-in-controversy requirement for diversity jurisdiction, or alternatively, whether this Court should retain supplemental jurisdiction over this claim. (*See* ECF Nos. 57, 58, 60.) These issues are fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). Having considered the parties' arguments, the Court concludes that the amount-in-controversy likely exceeds $75,000. Further, even if this were not the case, discretionary factors would favor this Court's continued exercise of supplemental jurisdiction. Accordingly, the Court will retain jurisdiction over this case, and an Order will enter setting this case in for a status conference with respect to further proceedings.

## I.     Background[1]

In 2018, Defendant Strategic Armory Corps ("SAC") purchased from Plaintiff a patent for a gas piston system (the "Brown Patent") that Defendant hoped to incorporate into its rifles. (*See* Patent Purchase Agreement, Mot. Summ. J. Ex. 2, ECF No. 43-5.) After purchasing the Brown Patent, Defendant realized that incorporation of the gas piston system into its rifles was not seamless, and it sought additional support from Michael Brown, Plaintiff's president. (Kalua Depo. at 96:10–97:9, Cross-Mot. Summ. J. Ex. 2, ECF No. 49-4.) Brown traveled to Defendant's factory in Arizona, where he worked with Defendant's team to integrate the gas piston system into Defendant's rifles. (*Id.*)

After several weeks of collaboration, the parties were able to fit the gas piston system onto a pair of SAC rifles. (*Id.*) Despite this initial success, rifles with the gas piston system were never put into commercial production or sold by Defendant. (Shincariol Depo. at 129:9–21, Cross-Mot. Summ. J. Ex. 1, ECF No. 49-3.) The parties disagree on the reason why the gas piston system was never commercialized. (*Compare* Pl. Supp. Br. at 10, ECF No. 57, *with* Def. Supp. Br. at 8 n.3, ECF No. 58.)

On August 15, 2019, Defendant stopped making payments related to its purchase of the Brown Patent. (Shincariol Depo. at 37:3–6.) In response, Plaintiff filed the instant lawsuit in the Circuit Court for Baltimore County, Maryland. (*See* Compl., ECF No. 2.) Plaintiff's Complaint alleged two counts: breach of the Patent Purchase Agreement and unjust enrichment. (*Id.* ¶¶ 20–31.) Through the latter count, Plaintiff sought recovery of benefits that it conferred on Defendant, in the form of the engineering support Brown had provided following the signing of the Patent

---

[1] A more complete background of this case is set forth in this Court's Memorandum resolving the parties' cross-motions for summary judgment (*see* ECF No. 55). Only the background relevant to the resolution of the present jurisdictional issue will be set forth here.

2

Purchase Agreement. (*Id.* ¶ 28.) Plaintiff quantified these benefits at $222,000, which represented the time expended by Brown, multiplied by his customary hourly rate. (*See* Amend. Compl. ¶¶ 14–15, ECF No. 42.) In state court, Defendant answered the Complaint (*see* ECF No. 1-4) and filed counterclaims (*see* ECF No. 1-10). One counterclaim alleged that there was a failure of consideration for the Patent Purchase Agreement because the Brown Patent was invalid. (*Id.* ¶¶ 46–52.) Based on this patent invalidity counterclaim, Plaintiff removed the case to this Court. (*See* ECF No. 1 at 1 (removing this case to federal court "[p]ursuant to 28 U.S.C. §§ 1454 and 1446," federal statutes that grant exclusive federal jurisdiction over—and permit removal of—patent claims).)

The Court recently granted summary judgment in favor of Plaintiff on the breach of contract claim, which also disposed of the patent invalidity counterclaim. (*See* ECF No. 56.) Because the patent invalidity counterclaim was resolved along with the breach of contract claim, this Court no longer retained federal question jurisdiction over this case on that basis. Further, the Court raised doubts about whether the remaining plausible basis for mandatory subject matter jurisdiction—namely, diversity—could be established. Plaintiff's filings had consistently quantified the amount-in-controversy for its unjust enrichment claim as a function of the time that Brown had spent working at Defendant's factory in Arizona. (*See, e.g.*, ECF No. 40 at ¶ 14(i)–(vii) (quantifying various "Benefit[s] to Defendant" as "[x] weeks of work ($150 per hour, 40 hours per week, [x] weeks).") Under Maryland law, however, it is well established that, "[u]nlike a statutory cause of action that provides a damages remedy based on a plaintiff's loss, the touchstone of unjust enrichment is a defendant's gain." (ECF No. 55 at 22 (quoting *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 257 (4th Cir. 2020)).) On the record before the Court at summary judgment, it appeared that Defendant's gain from Brown's engineering services was

3

nominal, due to its ultimate inability to produce and sell rifles that implemented the gas piston system. (*Id.*)

To resolve these doubts, the Court ordered the parties to submit supplemental briefing regarding evidence that established, *vel non*, that Plaintiff's remaining claim satisfied the amount-in-controversy requirement. (ECF No. 56.) The Court also requested that the parties discuss the propriety of the Court's continued exercise of supplemental jurisdiction over Plaintiff's unjust enrichment claim. (*Id.*)

## II.   *Legal Standard*

"Article III courts are courts of limited jurisdiction, possessing only the authority granted by the Constitution and Congress." *Scott v. Cricket Commc'ns., LLC*, 865 F.3d 189, 194 (4th Cir. 2017) (citing *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008)). This limitation requires that "a party seeking to adjudicate a matter in federal court [ ] allege, and when challenged, [ ] demonstrate the federal court's jurisdiction over the matter." *Strawn*, 530 F.3d at 296. When a court's jurisdiction is invoked by removal of a case from state to federal court, "the party seeking removal bears the burden of demonstrating that removal jurisdiction is proper." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) (quoting *in re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 583 (4th Cir. 2006)). This burden is ongoing;"[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphasis added).

State law claims may come within a federal court's original jurisdiction, which extends to "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1). Where the amount in controversy is contested, "both sides submit proof and the court decides, by a

4

preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied. *Scott*, 865 F.3d at 194. It must be a "legal certainty that plaintiff cannot recover the jurisdictional amount, [before] the case will be dismissed for want of jurisdiction." *Peamon v. Verizon Cable Corp.*, Civ. No. DKC-21-1023, 2021 WL 1751129, at *2 (D. Md. May 4, 2021). "The key inquiry in determining whether the amount-in-controversy requirement is met is not what plaintiff will actually recover, but 'an estimate of the amount that will be put at issue in the course of the litigation.'" *Scott*, 865 F.3d at 196 (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)).

Additionally, even when a court lacks original jurisdiction over a state law claim, it may have "supplemental jurisdiction" to adjudicate the claim. 28 U.S.C. § 1367(a). This supplemental jurisdiction encompasses "all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.*

Although supplemental jurisdiction can persist past the dismissal of the claims that triggered a federal court's original jurisdiction, "[t]he doctrine of supplemental jurisdiction allows district courts 'authority to decline to exercise supplemental jurisdiction . . . where the court dismisses the claims over which it has original jurisdiction." *Bishop v. Cnty. of Macon*, 620 F. App'x 148, 150 (4th Cir. 2015) (quoting *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir 2012)); *see also* § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues

of federal policy, comity, and consideration of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).[2]

### III.   *Analysis*

At summary judgment, Plaintiff's unjust enrichment claim presented itself as a narrow dispute regarding whether Brown was a "volunteer (also sometimes called an officious intermeddler)." *Hobbs v. St. Martin*, 320 F. Supp. 3d 748, 753 (D. Md. 2018) (applying Maryland law). Under Maryland law, volunteers—defined as those who "without mistake, coercion or request [ ] unconditionally confer[] a benefit upon another"—may not claim unjust enrichment. *Id.* (emphasis omitted). It is now clear, however, that this dispute was only the tip of the iceberg, and that the parties contest myriad issues related to whether Defendant was unjustly enriched by Brown's engineering services. The parties' elaboration of these issues makes clear that it is not a "legal certainty" that Plaintiff's claim falls below the jurisdictional threshold, and therefore this Court retains jurisdiction under § 1332(a). *Coffin v. TGM Assocs. LP*, Civ. No. SAG-20-3120, 2021 WL 1238560, at *5 (D. Md. Apr. 2, 2021) ("Generally, the damages sum claimed by the plaintiff controls when determining whether the amount-in-controversy is met, unless it is apparent to a legal certainty that the plaintiff cannot recover the amount claimed.").

---

[2] Defendant's briefing tracks a slightly different five-factor test outlined in *Ecology Services Inc. v. GranTurk Equipment, Inc.*, 443 F. Supp. 2d 756, 764 (D. Md. 2006). This test is structured to answer the question of "whether to retain jurisdiction when the amount in controversy falls below $75,000." *Id.* Because here the question is whether to remand, rather than dismiss, some of the *Ecology Services* factors do not squarely apply. *See id.* (considering as a factor, "whether the state statute of limitations would bar refiling the action in state court if dismissed"). However, the *Ecology Services* test uses many of the same factors, such as convenience, comity, and judicial economy, that animate the test applied by the Court here. *Compare Shanaghan*, 58 F.3d at 110 (looking to "convenience and fairness to the parties . . . comity, and consideration of judicial economy"), *with Ecology Servs.*, 443 F. Supp. 2d at 764 (looking to, *inter alia*, "an evaluation of the convenience and fairness to both parties . . . the amount of time and energy that the federal court already expended in connection with the case . . . [and] whether the case presents some significant issue of state law best decided in state court"). Therefore, despite utilizing a different standard, Defendant's briefing remains relevant and useful to the Court.

### A. *Amount-in-Controversy*

Nobody contests that the parties are diverse, Plaintiff is incorporated in Maryland and Defendant in Delaware. This leaves the amount-in-controversy as the only potential barrier to this Court's continued original jurisdiction under § 1332(a). In support of this Court's diversity jurisdiction, Plaintiff advances two theories to show that the amount claimed in the Complaint, although calculated based on Brown's work, accurately reflects the amount-in-controversy for Plaintiff's unjust enrichment claim.

Primarily, it contends that the evidence shows "the engineering support that extended beyond the gas piston system and to Defendant's overall manufacturing process *allow* Defendant to manufacture and produce firearms adapted with the patented gas piston system." (Pl. Supp. Br. at 5 (emphasis added).) Production of these firearms would be profitable, based on estimates by Defendant's corporate representative. (*Id.* at 8–9.) Plaintiff concludes from these facts that Brown's services placed Defendant in a position to profitably produce firearms incorporating the Brown Patent, a position that Defendant has inexplicably failed to capitalize on. (*Id.* at 12.)

Alternatively, Plaintiff argues that Defendant's failure to sell rifles incorporating the Brown Patent is of no moment, because Brown's engineering services "extended to Defendant's overall manufacturing process, not just to the gas piston system." (Pl. Reply at 6, ECF No. 60.) Therefore, even if Defendant was unable to ultimately profit from the Brown Patent, it derived independent benefits from the process improvements Brown implemented.

Under either theory, Plaintiff contends that it is entitled to the $222,000 that it originally claimed. It points out a line of Maryland cases that held "[t]he reasonable market value of plaintiff's services can be viewed as the correct remedy in most quantum meruit cases, even in many cases in unjust enrichment." *Alts. Unlimited, Inc. v. New Balt. City Bd. of Sch. Comm'rs*,

7

843 A.2d 252, 294 (Md. Ct. Spec. App. 2004); *but see Dolan v. McQuaide*, 79 A.3d 394, 402 (Md. Ct. Spec. App. 2013) (emphasis added) ("[I]n an action for contract implied-in-fact, *quantum meruit* is the customary or market price of the plaintiff's services, *whereas* in an unjust enrichment claim, *quantum meruit* is the actual value realized by the defendant."). Plaintiff's argument is based on the premise that "the reasonable value *can be viewed as the defendant's gain in certain situations*," particularly situations when "the unjust enrichment of the defendant cannot otherwise be measured." *Brault Graham, LLC v. Law Offs. of Peter G. Angelos, P.C.*, 66 A.3d 71, 89 (Md. Ct. Spec. App. 2013) (emphasis in original) (internal quotation marks and citations omitted). Here, because the value of Brown's engineering work is speculative (rifles that Defendant *could* produce), or otherwise difficult to quantify (general improvements to processes), Plaintiff contends that Brown's hourly rate is the proper measure of damages.

Defendant, who believes this Court lacks diversity jurisdiction, raises a number of reasons why Plaintiff's theories do not satisfy the amount-in-controversy requirement under § 1332(a). However, these arguments share a common flaw: all of Defendant's arguments go to why Plaintiff should not recover *on the merits*, not what the *amount* of recovery could plausibly be. *See Scott*, 865 F.3d at 196 (quoting *McPhail*, 529 F.3d at 956) ("The key inquiry in determining whether the amount-in-controversy requirement is met is not what plaintiff will actually recover, but 'an estimate of the amount that will be put at issue in the course of the litigation.'"). Compelling as Defendant's arguments may be, they are simply inapposite at this juncture.

Specifically, Defendant makes three points that it believes show that Plaintiff's claim is legally certain to fall below the $75,000 threshold. First, Defendant argues that any value derived from the commercialization (or potential commercialization) of the Brown Patent is attributable to the patent itself, not to Brown's subsequent consulting services. (Def. Supp. Br. at 9); *see also*

8

*Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000) (internal quotation marks and citation omitted) ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties."). Second, Defendant argues that the scope of services provided by Brown, and accepted by Defendant, was based on Defendant's expectation (created by Brown's assurances) that it would not be required to pay for those services. (Def. Supp. Br. at 5 ("AMBI failed to offer any evidence that had SAC known that it would have to pay for Mr. Brown's engineering services, that it nonetheless would have asked AMBI to provide such services.")); *see also Alts. Unlimited*, 843 A.2d at 304 ("Where the benefit conferred is a non-cash benefit, restitution is frequently denied because it would interfere with a defendant's freedom of choice of whether to 'buy' a particular service or benefit or not."). Third, Defendant again contends that Brown's pre-contractual commitments to provide engineering services free of charge preclude unjust enrichment for the same reasons asserted in its prior Cross-Motion for Summary Judgment (ECF No. 49). (Def. Supp. Br. at 5 ("The record makes clear that AMBI never intended to charge SAC for Mr. Brown's consulting services.").)

As noted above, all of these arguments plainly offer reasons why Plaintiff should not recover damages in unjust enrichment, not *how much* those damages could plausibly be. These merits-related arguments do not affect the Court's jurisdiction; the Court is discussing, after all, an amount *in controversy*. While Defendant's arguments may serve it well at a later point in this litigation, they must to do so in this Court.

The Court cannot say with legal certainty that Plaintiff's pleadings and the evidence establish an amount-in-controversy less than $75,000. *Shanaghan*, 58 F.3d at 112 ("[U]nless it is plain . . . that an amount less than the jurisdictional amount is all that is at issue, the district court

9

has jurisdiction over the case."). Although Plaintiff's Icarian theories of liability may create challenges with recovering on the merits of its claim, they put into controversy a sum exceeding $75,000. Accordingly, this Court must retain jurisdiction under § 1332(a).[3]

### B. *Supplemental Jurisdiction*

Even if this Court did not have diversity jurisdiction, the Court would exercise its discretion to retain supplemental jurisdiction over Plaintiff's unjust enrichment claim. *See* § 1367(c); *see also supra* Part II. Of the various factors that inform this decision, the Court finds that judicial efficiency compels its retention of jurisdiction. *See Shanaghan*, 58 F.3d at 110 (identifying, as non-exclusive factors informing courts' discretionary exercise of supplemental jurisdiction, "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy.").

As the instant briefing makes clear, the parties intend to litigate numerous, fact-specific issues with respect to the unjust enrichment claim. The Court is already familiar with these issues from its involvement in this case through summary judgment. *See Peter Farrell Supercars, Inc. v. Monsen*, 82 F. App'x 293, 297 (4th Cir. 2003) (favoring retention of supplemental jurisdiction when federal claims were resolved late in the litigation and "the remaining state law claims . . . had been developed and refined throughout the pretrial period.") Further, these issues implicate Plaintiff's breach of contract claim, which this Court has expended considerable energy in resolving. Remanding this case would require a state court to not only familiarize itself with the arguments the parties intend to raise going forward, but also with arguments and issues that this

---

[3] Because the Court retains original jurisdiction over Plaintiff's unjust enrichment claim, it will not address Plaintiff's alternative argument that it retains original jurisdiction based on Plaintiff's pending motion for attorney's fees from its successful breach of contract claim. (*See* Pl. Supp. Br. at 13); *but see N.Y. State Rifle & Pistol Assoc., Inc. v. City of N.Y.*, 140 S. Ct. 1525, 1538 (2020) (Alito, J., dissenting) (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990)) ("Of course, a claim for attorney's fees is not alone sufficient to preserve a live controversy.").

10

Court has already eliminated from the case. The Court sees no reason to impose this duplication of effort on its state court counterpart. *See McNulty v. Casero*, Civ. No. SAG-16-2426, 2020 WL 3060396, at *3 (D. Md. June 9, 2020) ("[T]o require a state court to obtain the same level of knowledge and familiarity that this Court has obtained with its facts and procedural history, would constitute a significant waste of judicial resources.").

None of the remaining factors informing the Court's exercise of supplemental jurisdiction cuts against the significant judicial economy gains achieved by retaining jurisdiction. While the parties take competing views on which forum would be the most fair and convenient for this litigation, neither identifies a specific issue with litigating in its non-preferred forum. (*Compare* Pl. Supp. Br. at 13 (warning of a "procedural quagmire before the Circuit Court for Baltimore County, Maryland," without elaboration), *with* Def. Supp. Br. at 11 (denying that "any inconvenience or unfairness to either party will occur if this Court remands the case," but not identifying any issues associated with continuing to litigate in federal court).) Similarly, neither party identifies any underlying issues of federal policy in this litigation. *See Maddox-Nichols v. S. Md. Hosp., Inc.*, Civ. No. TDC-14-0233, 2014 WL 6609313, at *6 (D. Md. Nov. 19, 2014) (concluding that claims that were "strictly state common law claims" do not "touch upon any underlying issues of federal policy").

Comity also does not favor remand. Although unjust enrichment "may not be reduced neatly to a golden rule," *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007), Maryland courts have extensively expounded the appropriate standards and considerations for resolving such claims. *See generally, e.g., Alts. Unlimited*, 843 A.2d 252 (extensively detailing unjust enrichment and its intersection with other equitable theories of recovery). All that is left for this Court is to apply that well-established framework to this case. Thus, while this case

11

presents factually complex issues of state law, that case-specific complexity is not the sort that favors remand. *Cf. Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) (favoring remand of case that "involved interpretation of complex South Carolina statutes on which there was no State precedent"). In sum, this case gains much in the way of efficiency—and loses little in other areas—from this Court's retention of supplemental jurisdiction. That balance would compel this Court to retain jurisdiction under § 1367, even if doing so was not required by § 1332(a).

In conclusion, this Court must retain jurisdiction over this case pursuant to its diversity jurisdiction. *See Chase Brexton Health Servs., Inc. v. Md.*, 411 F.3d 457, 462 (4th Cir. 2005) (internal quotation marks and citation omitted) ("Federal courts have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not."). Even if this Court's jurisdiction were not mandatory, strong values of judicial economy favor the continued exercise of supplemental jurisdiction and no competing concerns compel remand.

### IV. Conclusion

For the foregoing reasons, the Court finds that it retains jurisdiction over this matter. An Order shall enter setting a status conference to schedule further proceedings in this matter.

DATED this 20 day of May, 2021.

BY THE COURT:

/s/ James K. Bredar

James K. Bredar
Chief Judge